## WRIGHT AND OTHERS v. JOHN J. LINN.

Quere ? whether a general assignment for the benefit of creditors, which prefers some creditors, by a debtor in failing circumstances, is incompatible with the provisions and policy of our bankrupt law.

Assuming, for the present, the right to make such an assignment, nothing is clearer or better settled, than that the debtor can make no assignment of any part of his property in trust for himself. If there be a secret trust of this character, or an understanding that the assignment is, in any degree, for his benefit, it is a fraud upon creditors and is consequently void. It is not enough that an assignment be for a valuable consideration ; it must be *bona fide* also.

Great latitude is allowed by law, in the admission of circumstancial evidence on an issue as to the good faith of an assignment by a debtor in failing circumstances ; and any fact may be submitted to the jury, provided it can be established by competent means, which affords any fair presumption or inference, as to the real object and intention of the parties.

Where a merchant, in failing circumstances, made an assignment of his stock, book accounts, &c., to a trustee, for the benefit of his creditors, preferring some to others, and afterwards continued to manage and control the business, on what agreement did not appear, there being no provision therefor in the assignment, it was held that the trustee was, *prima facie* at least, responsible for the acts of the debtor ; and that both parties must be deemed to have contemplated and intended, at the time of making the assignment, the course of conduct, in their transactions and dealings with the property conveyed, or pretended to be conveyed, which they afterwards adopted.

---

Wright　v.　Linn.

---

Where on an issue as to the good faith of an assignment of a stock of goods, book accounts, &c., for the benefit of creditors, some of whom were preferred, the assignee was notified to produce the books of the debtor kept before the assignment, and those of the assignee kept since, and the assignee objected that they were not evidence, nor were they material, nor was he bound to produce them, and the Court below sustained the objection ; on error, it was presumed that the objection was sustained on the ground of want of materiality, and it was held that there was error.

Error from Victoria. This was a trial of the right of property in a stock of goods, wares and merchandize, levied upon by virtue of executions in favor of the plaintiffs in error, against Lavius F. Chapman, and claimed by the defendant in error, under the following assignment :

STATE OF TEXAS,    }    These presents witness, that
   *Victoria County.*    } whereas I, Lavius F. Chapman, of said county, merchant, am indebted to L. M. Wiley & Co., of New York, in the sum of two thousand seven hundred and fifty-three 40-100 dollars ($2,753 40-100) and to Seaman, Wills & Peck, of New Orleans, in the sum of one thousand and eighty-four 53-100 dollars ($1,084 53-100 ;) and to J. Hobbs & Co., of New Orleans, in the sum of four hundred and fifty 07-100 dollars ($450 07-100 ;) and also, to Richard Patrick & Co., of New York, in the sum of three thousand five hundred dollars ; and also to several other persons, whose names, with the amounts due to each, are hereafter to be given in a schedule and hereto annexed and marked A ; and whereas the said L. M. Wiley & Co. and the said Seaman, Wills & Peck and the said J. Hobbs & Co. have instituted suits against me by attachment and levied the same on my entire stock of goods, and also garnisheed many of my debtors, seized my books, notes and accounts ; and whereas my said creditors who have brought suit as aforesaid, have agreed to dismiss said suits and attachments on condition of my giving them approved personal security for said indebtedness ; and whereas John J. Linn and Edward Linn in consideration of the transfer and assignment

hereinafter mentioned, have signed with me, *in solido*, three several obligations of this date, payable in nine, fourteen and nineteen months, in favor of L. M. Wiley & Co. for nine hundred and seventeen 81-100 dollars each, with seven per cent. interest, making the sum of two thousand seven hundred and 53-100 dollars, due the said L. M. Wiley & Co. as aforesaid; and whereas John J. Linn and P. U. Pridham and John D. Logan have signed with me three several notes of this date, payable in ten, twelve and fourteen months, for the sum of three hundred and sixty-one 51-100 dollars each ($361 51-100) in favor of Seaman, Wills & Peck, making the sum of one thousand and eighty-four 53-100 dollars, due them as aforesaid; and whereas Wm. T. Mitchell and J. E. Shanks have signed with me a note in favor of J. Hobbs & Co. for four hundred and fifty 07-100 dollars, payable on or before the first day of January next, and the said Wm. T. Mitchell and J. E. Shanks have so signed as aforesaid, in consideration of the transfer and assignment hereinafter mentioned, agreed to be made for their security before their signing said notes as aforesaid; and whereas I am not able to pay and satisfy the several debts due by me, promptly and at maturity; therefore, in accordance with my agreement with my said personal sureties who have signed with me said several obligations and notes aforesaid, and in consideration of the purposes hereinafter expressed, I, the said Lavius F. Chapman, have bargained, sold, transferred, set over and delivered to John J. Linn of Victoria county, and by these presents do bargain, sell, transfer, set over and deliver to the said John J. Linn (who is one of my sureties aforesaid) his executors, administrators and assigns, all and singular my stock in trade, consisting in goods, wares and merchandize, and named in the schedule hereto annexed, dated August 24th, 1852, and marked B; also all my notes, books and accounts, due me by my debtors, a schedule of which, with the names of the debtors, and the amounts due by them respectively is to be made and hereto annexed and marked C—to have, hold and

receive and take the said stock in trade, notes, books and ac-
counts, to him the said John J. Linn, his executors, adminis-
trators and assigns, upon trust, that he, the said John J. Linn,
his executors and administrators do and shall, as soon as con-
veniently may be, make sale and dispose of so much and such
parts thereof as are saleable, for the best price or prices in
money that can be had or obtained for the same; and do and
shall collect and get in so much thereof as are outstanding and
not in their nature saleable. And it is hereby declared and
agreed that the said John J. Linn, his executors and adminis-
trators, shall stand possessed of, and interested in, the moneys
to arise by such sale or sales and to be called in and received
as aforesaid, upon trust and to the intent that he shall and do,
in the first place, retain, to pay and reimburse himself, all such
costs, charges and expenses, as he shall or may pay, sustain or
expend in or about such sale or sales so to be made as afore-
said, or in getting or collecting in the debts and sums of money
mentioned to be hereby assigned as aforesaid, and all other
costs, charges and expenses incident to, or which may be in-
curred or sustained in or about the execution of the trust herein
expressed or any of them, and for the expense of preparing
these presents, and then in trust, that he, his executors and
administrators, do and shall apply the residue of the said trust
moneys in and towards the payment and satisfaction of the
debts due by me, and to pay and satisfy the same in the order
and preference herein stated, that is to say: First, as they
severally fall due, the notes hereinbefore described, signed by
me, with my sureties herein named, in favor of L. M. Wiley
& Co., Seaman, Wells & Peck and J. Hobbs & Co. Second,
the account due by me to Richard Patrick & Co., of New
York, for the sum of three thousand five hundred dollars.
Third, all my other creditors, *pro rata* and *pari passu;*
and after payment of the whole of such debts, and of such
costs, charges and expenses as aforesaid, then in trust, that he,
the said John J. Linn, his executors and administrators do

and shall pay the surplus, if any, unto me, the said Lavius F. Chapman, my executors, administrators or assigns.

And for the purposes aforesaid, I, the said Lavius F. Chapman, hereby fully empower the said John J. Linn to do and perform all and singular the act or acts necessary and proper to carry out the object and intention of these presents, and to appoint such agents or attorneys to act in his room and stead, and under his direction as may by him, the said John J. Linn, be deemed necessary the more effectually to secure the several objects herein set forth.

It was duly recorded on the same day.

The property was in possession of Chapman at the time of the levy, and the burden of proof was on defendant.

After introducing the deed of assignment, in evidence, the defendant proved by A. H. Phillips, that he drew said deed, and that the merchandize conveyed was then under attachment, and the storeroom shut up; that the plaintiffs in the attachment agreed to, and did release said attachments, upon said Chapman giving personal security for said debts, and that the persons who signed said notes described in said deed as sureties for said Chapman, as he understood, did so upon the condition that the said Chapman would make said deed of assignment to defendant so as to secure them from their liability; that he stated to Chapman, in making said assignment, that he must make a full and complete assignment of his property, else the deed would be void; that his recollection was, that he, the witness, delivered to defendant the key of the storehouse containing said goods; that the making of said assignment was well known throughout the town; that he knew that the debt mentioned in said deed as due to Richard Patrick & Co., was due from Chapman to them. The defendant further proved that several other debts mentioned in said deed, were due from Chapman at the time of the execution of said deed. Defendant also proved by other witnesses, that persons who appear by said deed to be sureties on the notes therein mentioned,

executed said notes as such sureties, upon the express condition that the said Chapman should convey his property and effects to the defendant in trust to be sold by him in payment of said debts, to secure them from their liability as sureties of Chapman on said notes. The defendant also proved that the merchandize replevied in this cause, was a part of the merchandize referred to and conveyed by said deed to defendant. Defendant also proved by C. M. Brown, J. E. Shanks, J. Rosell, G. W. Palmer and others, that the defendant was frequently in and about the house in which said goods were offered for sale. It was also proved that defendant, during said time, collected some moneys due to L. F. Chapman before the execution of deed ; settled some of said accounts ; that the defendant paid the license on the sale of said goods after the date of said deed. C. M. Brown proved that he was indebted to said Chapman at the date of said deed, for which he afterwards gave his note for said indebtedness, which note went into the hands of defendant, and that he is now sued on said note by defendant.

Plaintiffs called C. M. Brown, and asked him to state what he had heard Linn say in reference to his object in taking said assignment from said Chapman. Witness stated that he did not recollect exactly, but from what Linn said he understood him to intend to help him, Chapman, against his creditors, or to aid and assist him in getting through his difficulties, or something to that effect ; did not recollect the language.

Verdict and judgment for defendant. Motion for new trial overruled.

Bills of exceptions as follows :

The issue being joined, and the burden of proof being on the defendant, he offered in evidence the deed of assignment from Lavius F. Chapman to himself, to the reading of which the plaintiffs in execution objected on the grounds : First, that the schedules therein named were not annexed ; secondly, that it made a preference among the creditors of said Chapman, at

the same time that upon its face it set up the fact of his being in failing circumstances, thus violating the rules of the bankrupt law ; and thirdly, that upon its face it showed the intention of the parties to it, to be to hinder and delay creditors ; which objections were overruled and the deed was read, to which the plaintiffs excepted.

Plaintiffs called Charles M. Brown and asked him to state what he knew from the defendant and Chapman by conversations with them, or either of them, as to the intention of the parties in making said assignment. To this the defendant objected that only the statements of the defendant were material, unless made by Chapman in his presence, and that those statements must be confined to the time of the making of the deed. Objection sustained, and plaintiffs excepted.

Plaintiffs then asked said Brown to state what he had heard the defendant say in reference to his object in taking said assignment from said Chapman. Objected to by defendant. The objection was overruled, and witness stated that he did not recollect exactly, but, from what defendant said, he understood him to intend to help Chapman with his creditors, or to aid and assist him in getting through his difficulties, or something to that effect ; did not recollect his language.

Plaintiffs then called James E. Shanks and proposed to prove the purchase by said Shanks of said Chapman, of goods out of the store, which were placed to the credit of said Chapman on his account with said Shanks (which was a bar account at a grocery) after the making of the assignment. Objected to by defendant, on the ground that he was not to be affected in this case, unless knowledge of those acts was brought home to him. Objection sustained ; plaintiffs excepted.

Plaintiffs then proved by said Shanks, that he knew of, or had heard the assignment generally spoken of ; that afterwards the said Lavius J. Chapman was in the store and made the settlements, and seemed to have charge of the business generally. They then offered to prove by said Shanks, the acts of

said Chapman. Objected to, and objection sustained on the same ground stated above. Plaintiffs excepted.

· Plaintiffs then called Johnson Rosell and George W. Palmer for the purpose above stated. They proved substantially the same fact as to the business being transacted by Chapman; but defendant objected to their testimony as to the acts of Chapman, without showing Linn's knowledge of the same, and the objection was sustained. Plaintiffs excepted.

Plaintiffs then offered the executions by virtue of which the levies upon the property was made. Objected to by defendant as to all except those of J. A. Settle and J. T. Bennedict, on the ground that the executions were void. Objection sustained by the Court, but upon the ground, solely, that the executions were not material. Plaintiffs excepted.

Plaintiffs then read a notice served upon the defendant to produce the books, &c., of Chapman, before the assignment, and the books, &c., kept by the assignee since the assignment. Defendant objected to their production, that they were not evidence, nor were they material, nor was defendant bound to exhibit said books. The defendant's objection was sustained, and the plaintiffs excepted.

Plaintiff offered an account (marked number 1) against Jesse O. Wheeler in favor of Lavius F. Chapman, receipted 31st December, 1852, and signed by said Chapman; objected to and objection sustained. Plaintiffs excepted.

Plaintiffs offered to prove a sale by Chapman to Shanks of a cask of brandy after the assignment and that Shanks by the direction of Chapman gave his note for the brandy to a brother of the said Chapman; and also that Chapman paid for goods bought for self and family with goods embraced in the assignment, all of which was excluded upon objection by the defendant, and the plaintiffs excepted.

*Stockdale & Jones*, for plaintiffs in error.

*J. J. Holt*, for defendant in error.

WHEELER, J. The right of a debtor to prefer one creditor to another, has been repeatedly recognized by this Court as unquestionable. But the right to make such preference in an assignment by a debtor for the benefit of creditors, has not heretofore been contested on the ground of its incompatibility with the bankrupt law of the State. It is now insisted on behalf of the appellants, that such preference cannot be made, in a general assignment by a debtor in failing circumstances, because incompatible with the provisions and policy of the law upon that subject. The question has not been met, in argument, by counsel for the appellee. It is a question which, in the view now presented, has not been heretofore considered by this Court; and we are disinclined to decide it without full argument, when it is not necessary to the present disposition, and may not become so in the final decision of the case.

Assuming, then, for the present, the right to make such an assignment, nothing is clearer or better settled, than that the debtor can make no assignment of any part of his property in trust for himself. (Burrill on Assignments, 171 ; 5 Cowen, 547–8.) If there be a secret trust, of this character, or an understanding that the assignment, in any degree, is for his benefit, it is a fraud upon creditors, and is, consequently, void. (Edrington v. Rogers et al., 15 Tex. R. 188.) " The great and " indispensable requisite, (it has been said,) in all voluntary as-" signments by debtors, is good faith ;—the great and fatal ob-" jection,—fraud, or the intent to defraud creditors. It is not " enough, that an assignment be for a valuable consideration ; " it must be *bona fide* also." (Burrill on Assignments, 365 ; Edrington v. Rogers, before cited.) In order to determine the question of fraud, or good faith, the party impeaching the assignment as fraudulent, must, in most cases, have recourse to circumstantial evidence ; for it will seldom happen, that direct and positive proof of the fraudulent purpose can be obtained. And great latitude is allowed by the law, to the reception of circumstantial evidence. In the absence of direct evidence, that which conduces, in any degree, to establish the point in

issue, is, in general, admissible. Upon such a question, any fact may be submitted to the jury, provided it can be established by competent means, which affords any fair presumption or inference, as to the real object and intention of the parties. The defendant objected to all evidence, not only of the declarations of the debtor, and alleged fraudulent assignor, unless made at the time of the assignment, and in the presence of the defendant; but also to all evidence offered by the plaintiffs to show that the defendant suffered the debtor to remain in possession of the goods, and that he was disposing of them for his own benefit, or, at least, in a manner wholly inconsistent with the expressed object of the assignment, on the ground that the defendant was not to be affected by the acts of the debtor, unless knowledge of those acts was brought home to him; and his objections were sustained by the Court. The Court appears to have proceeded, in excluding evidence proposed by the plaintiffs, on the ground, that in order to affect the defendant by the fraud of his vendor, and avoid the conveyance, there must be proof positive of actual knowledge on the part of the former, of the fraudulent acts and intentions of the latter. Such proof could seldom be obtained; and to require it would be to give an effectual cover and protection to frauds and fraudulent conveyances. On such a question, all the facts accessible to the party impeaching the conveyance, and conducing to prove a purpose to defraud creditors, should have been permitted to go to the jury; and it would then have been for them to decide, under the direction of the Court upon the law, whether the assignment was, in fact, fraudulent; and whether the defendant was party to and affected by the attempted fraud of his vendor, the debtor. His permitting the latter to remain in possession of the goods, was apparently inconsistent with the terms and intention of the deed. It was of itself, evidence of fraud, which required explanation. Having been permitted to retain the possession of the goods, when the deed imported that the possession, as well as the property

in them was transferred to the defendant and was to be retained by him, the presumption must be, that he was permitted so to retain the possession, in accordance with the understanding of the parties at the time of making the assignment; that the manner in which he dealt with them, was in accordance with such understanding between himself and the defendant; and that the debtor was acting in pursuance of such understanding, and by authority of the defendant. If he had been constituted the agent of the latter, the legal and reasonable presumption undoubtedly is, that he was acting under the authority and advice of his principal. *Prima facie*, at least, the latter is to be held accountable for his acts; and both parties are to be deemed to have contemplated and intended, at the time of making the assignment, the course of conduct, in their transactions and dealings with the property conveyed, or pretended to be conveyed, which they afterwards adopted. If that has been inconsistent with the express terms and purpose of the conveyance, and such as to evidence an intention to hinder, delay and defraud creditors, it must be held to avoid the assignment, as to the defendant, and defeat his title as the assignee and beneficiary claiming under it.

It appears that the books kept by the parties, as well after as before the assignment, and as well those of the debtor, as those of the defendant, were excluded, on the ground, that it was not material what they disclosed as to the dealing of the parties, in respect to the goods; upon the supposition, probably, that the character of the assignment was not affected by their subsequent acts; that their subsequent fraudulent or illegal acts would not invalidate it. That is true, in general; it would be so in reference to the present inquiry, if there were no question as to the fairness of intention in making the assignment; if, indeed, that were not the very question at issue, and it were not proposed to prove, by the subsequent acts of the parties, what their intentions really were at the time. It would have been a sufficient ground for excluding the evidence,

if none but direct and positive evidence could be received upon such a question; or, if the acts of parties were not the index to their intentions, and it were not the fair presumption and inference that they must have intended beforehand to do, what they are shown actually to have done. But as that is the legal as well as natural and reasonable presumption, the evidence ought to have been admitted. It was perfectly competent to introduce the evidence proposed, for the purpose of showing, that, while the deed imports one thing, the acts of the parties import another, and very different thing; that, in a word, their acts had not been consistent with their deed; and hence that the latter did not contain a true exposition of their motives and purposes in making the conveyance.

We are of opinion, therefore, that the Court erred in excluding the evidence proposed by the plaintiff; and that the judgment, therefore, be reversed and the cause remanded.

Reversed and remanded.